## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Alan Grochowski, Virginia Johnson, and William Skaleski, and, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC, | Case No.:<br><br>__CLASS ACTION__<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(B); AND**<br><br>**2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C)**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. Plaintiff Alan Grochowski ("Plaintiff Grochowski"), plaintiff Virginia Johnson, ("Plaintiff Johnson") and plaintiff William Skaleski ("Plaintiff Skaleski") (jointly as "Plaintiffs") bring this action against Defendant Quotewizard.com, LLC, ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

1

3. Defendant Quotewizard.com, LLC is involved in insurance selling and consulting. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiffs seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.    Plaintiffs also seek statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies.

5. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Southern District of Florida  where Defendant is located.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

**JURISDICTION AND VENUE**

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is

subject to the court's personal jurisdiction, and because Defendant resides in and market its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred from the State of Florida and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

12.     Plaintiff Grochowski is a natural person residing in the City of Sebastian, State of Florida.

13.     Plaintiff Johnson is a natural person residing in the City of Pocahontas, State of Kansas.

14.     Plaintiff Skaleski is a natural person residing in the City of De Pere, State of Wisconsin.

15.     Defendant Quotewizard.com, LLC is a company registered in Tallahassee, Florida, conducting business in insurance services and solutions.

4

## THE TCPA

16. The TCPA prohibits: (1) any person from calling a cellular telephone
    number; (2) an articial or prerecorded voice; (3) without the recipient's
    prior express consent.  47 U.S.C. § 227(b)(1)(A).

17. The TCPA states that the regulations required by paragraph (2) may
    require the establishment and operation of a single national database to
    compile a list of telephone numbers of residential subscribers who
    object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3).

18. The TCPA further states that it is prohibited to "any person from
    making transmitting a telephone solicitation to the telephone number of
    any subscriber included in such database."  47 U.S.C. § 227(c)(3)(F).

19. In an action under the TCPA, a plaintiff must only show that the
    defendant "called a number assigned to a cellular telephone service
    using an automatic dialing system or prerecorded voice."  *Breslow v.*
    *Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012),
    aff'd, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to
    issue rules and regulations implementing the TCPA.  According to the
    FCC's findings, calls in violation of the TCPA are prohibited because,

as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27

F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).   In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

24. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

25. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142

(2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  *Id*.

26. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

27. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

28. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" Van Patten v. Vertical Fitness Grp., No. 14-55980, 2017 U.S. App.

LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**Fla. Stat. § 501.059**

29. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves . . . the playing of a recorded message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat **§ 501.059(8)(a).**

30. The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. **§ 501.059(1)(i).**

31. A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. **§ 501.059(1)(a).**

32. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. **§ 501.059(4)(k).**

**GENERAL ALLEGATIONS**

26. At all times relevant, Defendant conducted business in the State of Florida.

**Plaintiff Johnson**

27. Plaintiff Johnson added her residential phone number to the National Do Not Call Registry on January 7, 2006.

28. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

29. On or around December 9, 2021, Plaintiff Johnson received an automated text message from ez.coverage-vista.com. The number associated with this text message is 888-845-9747. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When this number is called, it goes directly to Defendant. The text message offered Plaintiff Johnson the last chance to lower her auto insurance and provided a link for purchase. Plaintiff Johnson did not reply.

30. On or around December 15, 2021, Plaintiff Johnson received another automated text message from ez.coverage-vista.com. The number associated with this email is 888-845-9747. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When this number is called, it goes directly to Defendant. The text message was offering auto insurance and again provided a link for purchase. Plaintiff Johnson did not reply.

31. On or around January 23, 2022, Plaintiff Johnson received another automated text message from ez.coverage-vista.com. The number associated with this email is 888-845-9747. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. When this number is called, it goes directly to Defendant. The text message was offering auto insurance and again provided a link for purchase. Plaintiff Johnson did not reply.

32. Plaintiff Johnson did not provide Defendant with her express written consent to be contacted.  This is in violation of 47 U.S.C. § 227(a)(5).

**Plaintiff Skaleski**

33. Plaintiff Skaleski added his residential phone number to the National Do Not Call Registry on August 29, 2009.

34. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

35. On or around December 2, 2021, Plaintiff Skaleski received a call from 715-814-8085. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

36. On or around January 7, 2022 Plaintiff Skaleski received a call from 715-226-4167. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

37. On the same day, Plaintiff Skaleski received another call from 534-344-8895. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

38. On the same day, Plaintiff Skaleski received another call from 534-220-2234. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

39. On January 17, 2022, Plaintiff Skaleski received a call from 534-400-3126. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

40. From February 14, 2022 to February 15, 2022, Plaintiff Skaleski received three calls from 888-996-9793. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up the phone identified the company as Medicare Assist.

41. From April 25, 2022, to April 27, 2022, Plaintiff Skaleski received approximately fifteen calls from Defendant. Plaintiff Skaleski rejected the call. When redialed, this number related back to Defendant. The person who picked up each of these calls identified the company as Medicare Assist.

42. On or around April 27, 2022, Plaintiff Skaleski received a call from 715-800-2278. He answered the call. The caller identified themselves as a representative of QuoteWizard, and offered to sell Plaintiff Skaleski insurance.

43. Defendant called Plaintiff Skaleski as many as eight times a day.

44. Plaintiff Skaleski did not provide Defendant with his express written consent to be contacted.  This is in violation of 47 U.S.C. § 227(a)(5).

**Plaintiff Grochowski**

45. Plaintiff Grochowski added his residential telephone number to the National Do Not Call Registry July 1, 2003.

46. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

47. On or around September 14, 2021, Plaintiff Grochowski received a prerecorded voice call from 586-500-9358. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The prerecorded voice asked Plaintiff Grochowski if he was paying too much for car insurance. When prompted, Plaintiff Grochowski dialed the number two (2) to talk to an agent and was provided with call back number 888-996-9793 and the website quotewizard.com.

48. The next day, Plaintiff Grochowski received another prerecorded  call from 970-514-5859 which was identical to the previous call. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Plaintiff Grochowski pressed two (2) for an agent and told them to not call again.

14

49. The next day, Plaintiff Grochowski received another prerecorded call from 970-713-4390 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Again, Plaintiff Grochowski pressed two for an agent and told them to not call again.

50. On the same day, Plaintiff Grochowski received another prerecorded call from 717-902-5360 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Again, Plaintiff Grochowski pressed two for an agent and told them to not call again.

51. The next day, Plaintiff Grochowski received another prerecorded call from 308-545-2043 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. Again, Plaintiff Grochowski pressed two for an agent and told them to not call again.

52. The next day, Plaintiff Grochowski received another prerecorded call from 308-350-5188 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or

Defendant's agent. Plaintiff Grochowski was driving and unable to request and agent.

53. On or around September 24, 2021, Plaintiff Grochowski received another prerecorded call from 262-661-5919 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or Defendant's agent.  Plaintiff Grochowski pressed two for an agent and told them to not call again.

54. On or around September 29, 2021, Plaintiff Grochowski received another prerecorded call from 262-582-5123 which was identical to the previous calls. Upon information and belief, this number belongs to Defendant and/or Defendant's agent.  Plaintiff Grochowski pressed two for an agent and told them to not call again.

55. Plaintiff Grochowski received eight calls from Defendant. All the calls answered were prerecorded in nature.

56. Defendant's phone calls constitute telephone solicitation because it encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiffs insurance.

57. Plaintiffs received phone calls and text messages made from within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant made other phone calls and text messages to individuals residing within this judicial district and throughout the United States.

58. Defendant's phone calls and text messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

59. Defendant's phone calls also inconvenienced Plaintiffs and caused disruption to their daily life.

60. Defendant's unsolicited phone calls and text messages caused Plaintiffs actual harm. Specifically, Plaintiffs estimates that they spent numerous hours investigating the unwanted contacts including how they obtained her number.

61. Furthermore, Defendant's phone calls and text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

# CLASS ALLEGATIONS

## PROPOSED CLASS

62. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

63. Plaintiff Skaleski and Plaintiff Johnson represent the Federal DNC TCPA Class.

64. Plaintiff Grochowski  represents the Federal Prerecord TCPA Class.

65. Plaintiffs bring this case on behalf of two Classes defined as follows:

The Federal DNC TCPA Class

All persons within the United States who received two phone calls or text messages within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call or message, within the four years prior to the filing of this Complaint.

The Federal TCPA Prerecorded Voice Class

All persons within the United States who received any solicitation/telemarketing phone calls from Defendants to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

66. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class but believe the Class members number in the several thousands, if not more.

**NUMEROSITY**

67. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

68. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant call records.

**COMMON QUESTIONS OF LAW AND FACT**

69. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls and text messages to Plaintiffs' and Class members' cellular telephones;

(2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls and/or messages;

(3) Whether Defendant conduct was knowing and willful;

(4) Whether Defendant are liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

70. The common questions in this case are capable of having common answers. If Plaintiffs' claims that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

71. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

20

72. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

73. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

74. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible

standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(C)(5)

**(ON BEHALF OF PLAINTIFF JOHNSON AND SKALESKI AND THE CLASS)**

75. Plaintiff Johnson and Plaintiff Skaleski re-allege and incorporate the foregoing allegations as if fully set forth herein.

76. A person who has received more than one telephone call or text message within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

**(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

**(C)** both such actions.

77. Defendant – or third parties directed by Defendant dialed numbers without to make non-emergency telephone calls or text messages to the telephones of Plaintiffs and the other members of the Class defined below.

78. These calls or messages were made without regard to whether or not Plaintiff Johnson and Plaintiff Skaleski or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call or text the cell phones of Plaintiff Johnson and Plaintiff Skaleski and the other members of the putative Class when its calls were made.

79. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls or text messages to the phones of Plaintiff Johnson and Plaintiff Skaleski and the other members of the putative Class without their prior express written consent.

80. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

81. Because Defendant knew or should have known that Plaintiff Johnson and Plaintiff Skaleski and Class Members had not given prior express consent to receive its autodialed calls with pre-recorded voice messages, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**82.** As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff Johnson and Plaintiff Skaleski and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff Johnson and Plaintiff Skaleski and the Class are also entitled to an injunction against future calls. *Id.*

## COUNT II

### VIOLATIONS OF TCPA, 47 U.S.C. § 227(B)

### (ON BEHALF OF PLAINTIFF GROCHOWSKI AND THE CLASS)

83. Plaintiffs re-alleges and incorporates the foregoing allegations as if fully set forth herein.

84. Defendant – or third parties directed by Defendant – used equipment having the capacity to initiate telephone calls and text messages to any residential line using a prerecorded voice to deliver a message to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class in violation of 47 U.S.C. § 227(B).

85. Defendant has, therefore, violated 47 U.S.C. § 227(B) by using an automatic telephone dialing system and/or pre-recorded voice messages to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

86. Defendant knew that it did not have prior express consent to make these autodialed calls or texts and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

87. As a result of Defendants violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and

every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendant from calling telephone numbers that are on the national do-not-call registry without the prior express permission of the called party;

c. An order naming Plaintiff as the class representative;

d. An order naming Plaintiff's counsel as class counsel;

e. An award of actual and statutory damages;

f. An award of treble damages for willful violations; and

g. Such further and other relief the Court deems reasonable and just.

///

///

///

///

///

26

### TRIAL BY JURY

88. Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 24, 2024                               Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE_____
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No.1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
2221 Camino Del Rio.
Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com